UNITED STATES of America,
Plaintiff–Appellee,

v.

Kelly J. JACKSON, Defendant–Appellant.

No. 93–1003.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 16, 1993.

Decided Aug. 12, 1994.

Daniel T. Flaherty (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

Mark S. Rosen (argued), Michael Holzman, Rosen & Holzman, Waukesha, WI, for defendant-appellant.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Kelly J. Jackson challenges his sentence for bank fraud on the ground that the district court failed to give any notice of its intent to impose a two-level enhancement for abuse of a position of trust until the moment of sentencing.

## I. BACKGROUND

Jackson pleaded guilty to one count of causing the fraudulent transfer of $231,708.61 from a First Wisconsin Bank internal account for the purpose of executing and attempting to execute a scheme and artifice to obtain money under the custody and control of the bank in violation of 18 U.S.C. § 1344. The presentence report (PSR) set Jackson's base offense level at six pursuant to U.S.S.G. § 2F1.1(a) and added eight levels to reflect the amount of "loss" involved. § 2F1.1(b)(1)(I). Two points were added for more than minimal planning, § 2F1.1(b)(2)(A), and two more for the defendant's role in the offense. § 3B1.1(c) (enhancement for defendant who is an "organizer, leader, manager, or supervisor" in the offense). Subtracting three points for timely acceptance of responsibility, § 3E1.1, resulted in an adjusted base offense level of 15, which, when combined with a criminal history category of I, resulted in a Guideline sentencing range of 18 to 24 months.

At the sentencing hearing the court asked whether a Guideline enhancement for an abuse of a position of trust, § 3B1.3, had been considered in the calculation. The probation officer advised the court that he had not considered an enhancement based on an abuse of trust and therefore he did not recommend it in the PSR. Defense counsel objected stating that neither he nor the defendant had been given notice that this would be a factor considered until the very moment of sentencing and requested an adjournment to prepare a response. The court denied counsel's request, finding that the fraudulent internal transfer was a clear violation of the trust the bank placed in Jackson, and imposed a two-level increase. Because the court refused to accept the recommended two-level enhancement for Jackson's role in the offense, i.e., leader/organizer, the applicable Guideline range was the same as recommended in the PSR. The court sentenced Jackson to an 18 month term of imprisonment, to be followed by 5 years of supervised release, and ordered him to pay $3,400 in restitution.[1]

## II. ANALYSIS

Because Jackson's sentence was enhanced on a legal ground different from that noticed in the PSR, or the prosecutor's recommendation, the issue presented by the defendant on appeal is whether the failure to give notice in advance of the sentencing hearing resulted in a sentence imposed either in violation of law or as a result of an incorrect application of the Guidelines. See 18 U.S.C. § 3742. We agree with the defendant's position that there is a notice problem, as we will discuss below, but initially address two threshold issues: (1) the fact that the defendant has already completed his sentence and (2) the possibility that Jackson's position of money marketing clerk was likely no different than that of a bank teller. See U.S.S.G. § 3B1.3,

comment. (n. 1) ("[t]his adjustment [abuse of trust], for example, would not apply to an embezzlement by an ordinary bank teller").

In this case, the defendant has completed his prison sentence. In that regard, we would encourage defendants facing relatively short sentences to seek release pending appeal or move for an expedited appeal because it is often difficult to file an appeal, docket it, set a briefing schedule, hear oral argument, and draft an opinion before a very short sentence has been served. See 18 U.S.C. § 3143(b) (allowing for release of a defendant pending appeal).

### A. Abuse of Trust Enhancement

 Jackson did not present an argument at sentencing on the abuse of trust enhancement, because the defendant and his counsel, without knowledge of the court's intentions, were unprepared to make such an argument. See infra at 1107 & n. 4. Nonetheless, we have authority to correct the court's error in applying the two-level enhancement for abuse of trust under Fed.R.Crim.P. 52(b) which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." See United States v. Seacott, 15 F.3d 1380, 1383 (7th Cir.1994).

 The commentary to the Sentencing Guidelines states

"The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons. This adjustment, for example, would not apply to an embezzlement by an ordinary bank teller."

U.S.S.G. § 3B1.3, comment. (n. 1).[2]

The record reveals that the defendant graduated from high school and attended college for a period of time but has not received a degree. At the time of his arrest, he had

---

1. We note that the defendant was released from confinement on April 25, 1994.

2. The defendant was sentenced under the 1992 Sentencing Guidelines. The 1993 version of the Guidelines further defines the position of trust as "a position of public or private trust characterized by professional or managerial discretion

(i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily nondiscretionary in nature." U.S.S.G. § 3B1.3, comment. (n. 1) (1993).

been employed by the bank for some eleven months and was earning $14,952 as a "money market clerk." These facts convince us that the court erred in applying the enhancement for abuse of trust or use of special skill because Jackson's education, training, salary, and employment position do not appear to be that of a person in a position of trust or one with special skill. *See* U.S.S.G. § 3B1.3, comment. (n. 2) ("[s]pecial skill refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing"). Under ordinary circumstances, we would vacate the defendant's sentence and remand to the district court with instructions to conduct a sentencing hearing on the issue of whether Jackson's position was like that of a bank teller and thus not subject to the position of trust enhancement. As mentioned above, however, the defendant did not move for release pending appeal or for an expedited appeal and he has completed his prison sentence, thus we remand to the district court to determine if the defendant's position (money marketing clerk) was similar to that of a bank teller, and in the event it was, whether he is entitled to a two-point reduction in his offense level and a possible decrease in his five-year term of supervised release.

### B. *Notice*

█ It is well-known that the imposition of sentence is a critical stage of criminal proceedings, if not the most critical, particularly where the defendant has pleaded guilty. *United States v. Rosa,* 891 F.2d 1074, 1079 (3d Cir.1989); *see also Fourteenth Annual Review of Criminal Procedure: United States Supreme Court and Courts of Appeals 1983–1984,* 73 Geo. L.J. 249, 671 n. 2502 (1984–85) (authorities mentioned therein). Under the Sentencing Guidelines, the court's resolution of disputed sentencing factors has a measurable effect on the punishment imposed. *Burns v. United States,* 501 U.S. 129, 133, 111 S.Ct. 2182, 2185, 115 L.Ed.2d 123 (1991) (citing U.S.S.G. § 6A1.3, commentary). Thus, to ensure accuracy in the sentencing process as dictated by the Guidelines procedural formality is unavoidable. *Id.*

█ To that end the Guidelines provide that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." U.S.S.G. § 6A1.3(a), p.s. This court has held that to satisfy the procedural requirements of § 6A1.3, the district court must provide sufficient notice to the parties of the specific facts which the court intends to rely on so that the parties may contest the issue at sentencing. *United States v. Cantero,* 995 F.2d 1407, 1413 (7th Cir.1993); *see* 18 U.S.C. § 3552(d) (presentence report must be disclosed to defendant, counsel for defendant and government attorney 10 days prior to sentencing). Focused, adversarial development of the factual and legal issues relevant to determining the appropriate sentence is also contemplated by the mandate of Federal Rule of Criminal Procedure 32 which requires that the court afford the parties "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." Fed.R.Crim.P. 32(a)(1). No meaningful opportunity to comment can be had, however, without knowledge that these matters will be considered in sentencing. *See, e.g., United States v. Pless,* 982 F.2d 1118, 1129 (7th Cir.1992) (a corollary to the right to be sentenced on the basis of accurate information is the entitlement to an opportunity at the sentencing hearing to challenge factors that are in dispute). Knowledge imputes notice; thus, it is the specificity of notice necessary to guarantee a meaningful opportunity to comment that we consider in this case.

█ We begin with the well-established premise that a defendant has a right to be sentenced on the basis of accurate information, *Pless,* 982 F.2d at 1127, which implicates the corollary "right to know what evidence will be used against him at the sentencing hearing." *United States v. Morales,* 994 F.2d 386, 389 (7th Cir.1993) (citing Fed.R.Crim.P. 32(a)(1)). In the usual set of circumstances, either the presentence report or the Government in its own sentencing recommendation will give the defendant notice that an enhancement or departure will be at issue in the sentencing hearing as well

as notice of the facts and circumstances that tend to support the increase. *United States v. Thomas,* 969 F.2d 352, 356 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 274, 121 L.Ed.2d 202 (1992); *Burns,* 501 U.S. at 133, 111 S.Ct. at 2185. If the request for enhancement is neither reflected in the presentence report nor in the prosecutor's recommendation, the Supreme Court has held that before a district court may depart upward on a ground not previously identified as a ground for upward departure, "Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns,* 501 U.S. at 138, 111 S.Ct. at 2187. This principle likewise entitles the government to reasonable notice that the court is considering a downward departure on a ground not raised by either party. *United States v. Andruska,* 964 F.2d 640, 644 (7th Cir.1992). While this circuit has not held that the *Burns* notice requirement applies as such to adjustments, we have consistently acknowledged that Rule 32 requires that the defendant receive *some* notice of potential enhancements. *Thomas,* 969 F.2d at 356 n. 2; *see Morales,* 994 F.2d at 389; *see also United States v. Brady,* 928 F.2d 844, 847 n. 3 (9th Cir.1991) (adequate notice required not only for departures but also for an adjustment to the base offense level).[3] Notice of issues to be considered in the sentencing phase of the trial is, therefore, a prerequisite to determining the appropriate sentence. What is not clear is the degree or type of notice deemed adequate for an adjustment.

 We understand and agree that the district court is not required to give notice of its decision to sentence within the applicable Guideline range on grounds identified in the presentence report, because under these circumstances the defendant is clearly made aware of the grounds for a potential enhancement as they are reflected in the presentence report. *See, e.g., Cantero,* 995

F.2d at 1413 (§ 6A1.3 does not require an evidentiary hearing where PSR identified defendant as leader or organizer, defendant filed objection to enhancement, and court resolved issue based on written submissions); *Pless,* 982 F.2d at 1128–29 (PSR provided notice of factors supporting enhancement); *United States v. Saunders,* 973 F.2d 1354, 1364 (7th Cir.1992) (no notice required of intention not to grant reduction for acceptance of responsibility where PSR had recommended reduction), *cert. denied,* —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993); *United States v. Osborne,* 931 F.2d 1139, 1147–49 (7th Cir.1991) (defendant had prior notice that quantity of drug would be a factor considered in sentence determination, notice given at hearing of grounds for actual calculation was sufficient); *United States v. Cagle,* 922 F.2d 404, 408 (7th Cir.1991) (same). When the trial judge relies on a Guideline factor not mentioned in the PSR nor in the prosecutor's recommendation, contemporaneous notice at the sentencing hearing, as in this case, in our opinion fails to satisfy the dictates of Rule 32. " 'The right to be heard has little reality or worth unless one is informed' that a decision is contemplated." *Burns,* 501 U.S. at 136, 111 S.Ct. at 2186 (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)).

In arguing that notice given at the sentencing hearing was adequate, the Government contends that the notice requirement articulated in *Burns* applies only to departures from the Guidelines. We are cognizant of the fact that there is some support for this position. At least two circuits find a distinction between notice required for a departure from the Guidelines and notice for an adjustment within the Guidelines. The First Circuit, in *United States v. Canada,* 960 F.2d 263, 266–67 (1st Cir.1992), held that the Guidelines themselves provide sufficient notice of potential adjustments to meet Rule 32's notice requirement; so the sentencing

---

**3.** Judge Kanne contends that we have not adequately distinguished between sentence adjustments and sentence departures, yet as we state in the text, this Circuit has not held the *Burns* (sentence departure) notice requirement applies to sentence adjustments. Nonetheless, because sentencing is arguably the most critical stage of

the criminal proceeding, *see supra* at 1105, and because an adjustment for abuse of trust is a "factor important to the sentencing determination," i.e., it may very likely result in an increase in the defendant's sentence, the defendant is entitled to notice. U.S.S.G. § 6A1.3(a). The degree of notice is discussed *infra* at 1108–10.

judge is not required to give notice in advance of sentencing, at least where the facts upon which the adjustment is based are already known to the defendant. Canada pleaded guilty to several counts of fraud and conspiracy in connection with operating a scheme in which unsuspecting individuals were induced to pay advance fees in exchange for the promise to arrange financing. At sentencing, the court for the first time raised the question of whether the defendant's supervisory role in the offense warranted an upward adjustment. In imposing the enhancement, the court relied upon testimony that Canada himself provided at his codefendant's trial. Canada argued that the district court did not give him notice that it would rely on factual information from these other proceedings to assess whether Canada had played a supervisory role in the offense. This information was not in the presentence report nor otherwise in the record in Canada's case. But because Canada included excerpts from his prior testimony in a memorandum submitted to the judge prior to sentencing, the court concluded that he was not ignorant of the facts relevant to the adjustment. The Eighth Circuit has also adopted the proposition that *Burns* does not mandate that notice be given before a sua sponte upward adjustment. *United States v. Willis,* 997 F.2d 407, 416 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994); *see United States v. Adipietro,* 983 F.2d 1468, 1473 (8th Cir.1993) (PSR recommendation of a two-level enhancement under § 3B1.1(c) for defendant's role as a manager or supervisor in the conspiracy was adequate notice of a three-level enhancement applied under § 3B1.1(b)). In *Willis* the court upheld a sua sponte enhancement for obstruction of justice even though the PSR stated that there was no information indicating that the defendant had impeded justice. The sentencing court imposed the obstruction enhancement based on its finding that Willis had given perjurious testimony during trial. Because Willis was obviously aware that he had given perjured testimony, and because the Guidelines had adequately apprised Willis of the potential enhancement for obstructing justice based on perjury, the court reasoned that Willis could not have been unfairly surprised by the district court's decision to consider the enhancement. 997 F.2d at 416–17.

The present case is factually distinguishable from the First and Eighth Circuit cases, because there is no evidence in this record to indicate that the defendant, Jackson, was or should have been aware of the facts relevant to an adjustment for an abuse of a position of trust. Jackson pleaded guilty. So, the record evidence—tested by the adversarial process prior to the sentencing hearing—is sparse and nowhere could we find, nor has the government directed us, to facts or documents which refer to an abuse of a position of trust. Without such a reference, we are left to conclude that Jackson was unaware of the fact that certain conduct—tangentially related to the offense he committed—could form the basis of an enhancement for an abuse of a position of trust. Certainly, defense counsel cannot be faulted for failing to anticipate or be prepared to argue every conceivable ground on which a trial judge might choose to enhance the defendant's sentence.[4]

---

4. Judge Kanne suggests that based on the defendant's knowledge of his job title at the bank ("money marketing clerk"), that he must have had notice of the facts giving rise to the abuse of trust enhancement. We disagree, mere knowledge of one's job title falls far short of vindicating the notice concerns we discuss in the text, i.e., the defendant's right to have notice in advance of sentencing of the facts and the basis for the sentencing increase. *See infra* at 1108–10. We are of the opinion that a defendant and his counsel are entitled to know in advance of the sentencing hearing of the factual grounds and the basis in the Sentencing Guidelines for a proposed enhancement. Only when equipped with the knowledge of both the facts and the Guide-

line section at issue will defense counsel be prepared to defend his client. In this case, defense counsel, without prior notice of the proposed enhancement, had no opportunity to present meaningful rebuttal concerning the facts and legal authority. The sentencing transcript clearly reveals defense counsel was caught off guard by the court's decision to enhance the sentence for abuse of trust:

COURT: What do you have to say about the abuse of trust?

MR. ROSEN: I didn't anticipate that was going to come up as an argument. * * * If the Court's going to take that, I would ask for some time to prepare a response. As I have

As stated previously, this case differs from *Canada* and *Willis* because Jackson did not have knowledge of the facts giving rise to the sentencing enhancement. To the extent we differ from our sister circuits which hold that advance notice is not required for an adjustment so long as the defendant knew of the facts used to support the adjustment, we note that simply being aware of facts which may warrant an adjustment is not sufficient to satisfy Rule 32's notice requirement. Rather, the opportunity to challenge factors reasonably in dispute requires actual knowledge that those facts will be considered in sentencing. Only when armed with this knowledge will a defendant be able to rebut the proposed enhancement, and thus ensure that the sentencing process is fair and accurate. *See, e.g. Morales,* 994 F.2d at 389; *Pless,* 982 F.2d at 1129; U.S.S.G. § 6A1.3(b), p.s. ("[t]he court shall resolve disputed sentencing factors in accordance with [Fed.R.Crim.P. 32(a)(1)], notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence"). The right to know the facts and allegations against oneself is a cornerstone of our criminal jurisprudence. *See, e.g., Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring prosecutor to disclose exculpatory evidence to the defense); *Ex Parte Bollman,* 8 U.S. (4 Cranch) 75, 2 L.Ed. 554 (1807) ("accused shall enjoy the right 'to be informed of the nature and cause of the accusation'") (quoting U.S. Const. amend. VI).

A defendant's right to know what evidence will be used against him at sentencing means more than that the basis for a particular sentence enhancement is discernable through close study of the facts as outlined in the PSR coupled with a thorough examination of all potentially relevant guideline sections. *United States v. Paslay,* 971 F.2d 667, 673 n. 11 (11th Cir.1992) (rejects "constructive notice" as sufficient to satisfy *Burns* requirement that "specific grounds" for departure be "identified"). Rather, for a defendant to have notice that satisfies Rule 32(a)(1), either the PSR or the prosecutor's recommendation must affirmatively identify the basis for a potential sentencing increase. If neither of these exist, then the judge must inform the defendant, a sufficient time in advance of sentencing (i.e., not during the actual sentencing), of the specific grounds that the court is considering relying on to increase the terms of confinement. *See, e.g., Brady,* 928 F.2d at 847 (fact that grounds for departure may have been readily apparent does not obviate notice requirement). To hold otherwise would allow a critical sentencing determination to go untested by the adversarial process—a result inconsistent with that contemplated by Rule 32 and the Guidelines. *Burns,* 501 U.S. at 137, 111 S.Ct. at 2187.

In summary, we reiterate that *Rule 32 and § 6A1.3 of the Guidelines require both reasonable advance notice, i.e., knowledge, of the ground on which the district court is contemplating an enhancement as well as a meaningful opportunity to challenge the issue. The right to challenge a sentencing issue encompasses the right to present favorable evidence, including the presentation of witnesses when appropriate under U.S.S.G. § 6A1.3. Advance notice means that prior to the sentencing hearing the defense must be informed via the PSR, the prosecutor's recommendation or the court that a specific sentencing enhancement is being contemplated, e.g., an abuse of trust enhancement. When defense counsel is unaware until the sentencing hearing is in progress that the*

indicated, I have not had any time whatsoever to anticipate any sort of response to that sort of an argument. And I think it would take—would require some research on my part through the guidelines at the very least in order to respond to that. I don't mean to be rude. I just don't feel I am in a position to appropriately respond.

This exchange typifies the notice problem. Without advance notice, the defendant was effectively barred from presenting a meaningful defense to a guideline enhancement that resulted in a harsher sentence. Contrary to Judge Kanne's assertion that defense counsel "succinctly provided the court with information about his client which should have prohibited an upward adjustment for abuse of a position of trust," we are convinced that the above exchange at sentencing clearly demonstrates that defense counsel was unprepared to argue the position of trust enhancement.

*court is considering an enhancement, counsel is denied an opportunity to prepare and call witnesses, as allowed under U.S.S.G. § 6A1.3, much less to present evidence on disputed facts. Moreover, he is not permitted adequate time to prepare case law challenging the adequacy of the Guideline factor as it applies to the factual circumstances at hand.*

 Judge Kanne eschews the "drift toward converting sentencing proceedings into second trials," *post* at 1114, but as we stated above, sentencing "is the most critical stage of criminal proceedings, and is, in effect, the 'bottom-line' for the defendant." *Rosa,* 891 F.2d at 1079. "[E]ven one additional hour of confinement" is significant to a defendant, *United States v. Seacott,* 15 F.3d 1380, 1384 (7th Cir.1994), accordingly, we have held that Rule 32(a)(1) requires that the defendant be informed in advance of sentencing of the grounds for a sentencing enhancement which may result in a greater sentence. While we do not mean to suggest that calling witnesses will be necessary in all or even most cases, the Guidelines state in unambiguous language that "[a]n evidentiary hearing may sometimes be the only reliable way to resolve disputed issues.... The sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." U.S.S.G. § 6A1.3, comment. In this case, it is quite obvious from the sentencing record that the defendant and his counsel were taken by surprise and unprepared to argue the abuse of trust enhancement. In all likelihood, had the court simply continued the hearing and permitted counsel to submit a memorandum of law on the enhancement, Rule 32(a)(1) would have been satisfied and this case would not be

before us. Thus, Judge Kanne's trepidation that we are turning sentencing into a full-blown second trial is unfounded, we are merely seeking to assure that the defendant have a meaningful opportunity to respond to the proposed enhancement. U.S.S.G. § 6A1.3, p.s.

 Having concluded that the judge's giving notice to the defense of the proposed enhancement for the first time at sentencing is inadequate, a remand is required for resentencing with proper notice unless based on the record as a whole we can conclude that the error was harmless. *See United States v. Dawson,* 1 F.3d 457, 465–66 (7th Cir.1993); *United States v. Mount,* 966 F.2d 262, 265 (7th Cir.1992). Applying the harmless error doctrine to sentencing errors under 18 U.S.C. § 3742(f)(1), the Supreme Court in *Williams v. United States,* —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992), concluded that "the party challenging the sentence on appeal, although it bears the initial burden of showing that the district court relied upon an invalid factor at sentencing, does not have the additional burden of proving that the invalid factor was determinative in the sentencing decision. Rather, once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless, *i.e.,* that the error did not affect the district court's selection of the sentence imposed."[5] —— U.S. ——–——, 112 S.Ct. at 1120–21. In *United States v. Jones,* 983 F.2d 1425, 1429 (7th Cir.1993), this court applied the "but-for" harmless error standard of *Williams* to an upward adjustment for obstruction of justice. In rejecting a timely objection to the enhancement, the district court accepted an

5. In *Williams,* the Court stated that when a departure from the Guidelines rests on an invalid ground, a remand is required under § 3742(f) *only if* the sentence was imposed *as a result of* an incorrect application of the Guidelines. —— U.S. ——, 112 S.Ct. at 1120. "[A] sentence is imposed 'as a result of' a misapplication of the Guidelines if the sentence would have been different but for the district court's error." *Id.* Under this directive, the *"as a result of"* language of § 3742(f) might be interpreted to apply only where the district court erroneously interpreted the Guidelines. Given such a literal interpretation, the "but-for" analysis might not apply to cases where the sentence was imposed "in violation of law"—the provision which precedes the *as a result of* language of § 3742(f). This theoretical distinction, however, may have no practical implication. *See, e.g., United States v. Jones,* 983 F.2d 1425, 1429 (7th Cir.1993) (applying harmless error standard of *Williams* where court accepted an incorrect statement in PSR as true).

inaccurate characterization of the defendant's testimony in the PSR as true. Remand was determined to be unnecessary, however, because the district court had not relied on the improper factor, but rather made an independent determination of perjury.

Applying the harmless error doctrine in this case requires that we decide whether the same sentence would have been imposed if the district court either: (1) had not relied on the factor for which no notice was given, or (2) had given adequate notice. Had the district court not relied on the factor for which no notice was given, the offense level would have dropped from 15 to 13 with a resulting sentencing range of 12 to 18 months, rather than 18 to 24 months. Because the 18–month sentence imposed falls within either Guideline range, the district court's decision may be affirmed if it is clear that the choice of range did not affect the outcome. *Mount,* 966 F.2d at 265 (citing *United States v. Dillon,* 905 F.2d 1034, 1037 (7th Cir.1990)); *United States v. Tetzlaff,* 896 F.2d 1071, 1073 (7th Cir.1990). When the trial court acknowledges a potential overlap and expressly states that the same sentence would be imposed under either range there can be little doubt that any error in choosing between the ranges was harmless. *Mount,* 966 F.2d at 265. There is no such certainty here. Before imposing the sentence, the judge expressed his concern that this was not just "a quick little embezzlement" scheme, but rather the evidence indicated Jackson's willingness to commit a "big" offense. Clearly, an expression of concern on the part of the trial judge for the severity of an offense fails to communicate that a like sentence would have been imposed even under the reduced range. Yet, it perhaps is not unreasonable to conclude based on such reasoning that the district court would have imposed the same sentence. *See, e.g., United States v. Oduloye,* 924 F.2d 116, 118–19, n. 1 (7th Cir.), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2813, 115 L.Ed.2d 985 (1991). Concern of this type, however, is commonly expressed by judges at the time of sentencing. So to say that it clearly indicates that the judge would have imposed the same sentence under the lower range is speculation and speculation only.

Taking a different approach we could assume that, absent reliance on the abuse of trust factor, the court would have adopted the Guideline calculations recommended by the PSR and imposed the same sentence based on an enhancement for a supervisory role in the offense. § 3B1.1(c). This is a plausible conclusion for when the court rejected an enhancement for Jackson's role in the offense, the court expressed no opinion on the applicability of the enhancement in this case. Rather, without resolving the objections to a § 3B1.1(c) increase, the court simply reasoned that the more appropriate enhancement was under § 3B1.3 for an abuse of a position of trust. Because there is no basis in the record to conclude that the district court would have, in fact, imposed an adjustment based on § 3B1.1(c), this approach arguably calls for speculation greater than that contemplated under the harmless error doctrine. Indeed, the fact that the court did not give a § 3B1.1(c) enhancement is strong proof that the court did not believe the facts warranted such an enhancement. A final alternative is to assume that the district court would have reached the same conclusion had it given adequate notice of its decision. Because neither party discusses the issue of harmless error, there is no basis to determine what arguments—either legal or factual—they would have made concerning the merits of an abuse of trust adjustment under § 3B1.3. Without the benefit of a true adversarial presentation, any effort we might make to flesh out counsels' potential arguments would require undue speculation, nor is it even our prerogative to attempt to do so. Thus, under either of the latter approaches there is an insufficient basis in the record to conclude that the error did not affect the district court's selection of a sentence. So, to avoid unnecessary speculation a remand for resentencing is required.

## III. CONCLUSION

Under ordinary circumstances we would VACATE Jackson's sentence and REMAND this case to the district court with instructions to conduct a sentencing hearing on the issue of whether Jackson's position

was like that of a bank teller and thus not subject to the position of trust enhancement. Because the defendant has completed his term of confinement, the court, on remand, must determine whether Jackson's position (money marketing clerk) was similar to that of a bank teller, and in the event it was, whether he is entitled to a two-point reduction in his offense level and possibly a reduction in his five-year term of supervised release.

Finally, if four federal judges, this panel and the district judge, cannot agree on the notice requirements at sentencing, how are defendants and their counsel supposed to know what course of action to take? Under Judge Kanne's approach, each defense attorney will be required to familiarize himself with each and every enhancement possibility in the Guidelines to prepare for any unexpected enhancement the sentencing judge may see fit to invoke at the sentencing hearing. This places an unreasonable burden on the defense attorney and it flies in the face of Rule 32 which requires that the presentence report (PSR) be made available to the defendant ten days prior to sentencing. The PSR is of little value if the judge can *sua sponte* invoke adjustments to the sentence not identified in the PSR. If the probation officer, after obtaining the U.S. Attorney's input, failed to recommend a possible ground of enhancement such as abuse of trust, obstruction of justice or role in the offense, why should we expect the defendant or defense counsel to anticipate the enhancement and be prepared to offer a defense without prior notice? Alternatively, in the interest of justice and time efficiency, I believe that the defendant must receive advance notice of all proposed enhancements ("adjustments") in the presentence report, the prosecutor's recommendation or from the sentencing judge in advance of sentencing. The most efficient cost avoider is the government or the court because they are in the best position to reduce the risk of an improper sentence enhancement by providing adequate notice to the defendant in advance of sentencing. The U.S. Supreme Court held in *Burns*, that based on Rule 32(a)(1), "it makes no sense to impute to Congress an intent that a defendant have the right to *comment*

on the appropriateness of a *sua sponte* departure but not the right to be *notified* that the court is contemplating such a ruling." *Burns*, 501 U.S. at 135–36, 111 S.Ct. at 2186. "*Burns* requires that pursuant to Fed. R.Crim.P. 32, criminal defendants be provided notice *prior* to the sentencing hearing of the *specific grounds* for any upward departure that a sentencing court is considering." *United States v. Paslay*, 971 F.2d 667, 673 (11th Cir.1992). While the case before us involves an adjustment and not a departure, we believe the same rationale applies, i.e., "Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling" so that the defendant and his counsel will not be surprised at sentencing; rather, they will be prepared to rebut all possible grounds for increasing his sentence. *Burns*, 501 U.S. at 137, 111 S.Ct. at 2187; *United States v. Brady*, 928 F.2d 844, 847 & n. 3 (9th Cir.1991) (requiring notice in advance of sentencing for an enhancement). In this case, had the court provided notice in advance of sentencing, it is highly likely that the improper enhancement would not have been applied to Jackson's sentence because defense counsel would have had an opportunity to prepare a defense and convince the court that a money marketing clerk is similar to a bank teller and thus not subject to the enhancement for abuse of trust.

VACATED and REMANDED.

POSNER, Chief Judge, concurring.

The district judge increased the sentence because Jackson had, in the judge's view, abused a position of trust. No one warned Jackson that his sentence might be increased on that basis. The judge did it out of the blue. But it was an upward adjustment, rather than a departure, so *Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991), is not strictly applicable; and two circuits, in decisions that cannot in my view be distinguished from the present case, have held that no warning is required when a mere adjustment is involved; all grounds for adjustment are specified in the guidelines, so if the defendant or his lawyer reads the guidelines carefully he will be pre-

pared to meet any and all grounds for adjustment. *United States v. Canada,* 960 F.2d 263, 266–67 (1st Cir.1992); *United States v. Adipietro,* 983 F.2d 1468, 1473–74 (8th Cir. 1993); *United States v. Willis,* 997 F.2d 407, 416–17 (8th Cir.1993). Especially given the too-frequent inadequacy of criminal defense lawyers, these decisions may be unrealistic, as Part IIB of Judge Coffey's opinion explains, and may, as he powerfully argues, be inconsistent with Fed.R.Crim.P. 32(a)(1), which entitles the defendant or his lawyer "to comment upon ... matters relating to the appropriate sentence." But I see no compelling reason to resolve the issue (and by doing so create an intercircuit conflict), given the alternative ground for decision set forth in Part IIA of Judge Coffey's opinion, which I join. Although the point is not argued by Jackson's lawyer, it is virtually certain that the district judge erred in holding that Jackson had abused a position of trust. He was a "money marketing clerk" paid $15,000 a year. A job so denominated and so meagerly remunerated is most unlikely to have been more responsible than that of a teller, and the application note to the relevant guideline says that "embezzlement or theft by an ordinary bank teller" does not warrant an adjustment for abuse of trust. U.S.S.G. § 3B1.3 Application Note 1. In a criminal case we can notice a plain error even if it is not argued to us. *See Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962) (per curiam); 3A Charles Alan Wright, *Federal Practice and Procedure—Criminal* § 856, p. 338 (2d ed. 1982). As there conceivably is more to a "money marketing clerk" than meets the eye, the proper course is (as all three of us agree) to remand for a further sentencing hearing at which the government can if it wants present evidence establishing that Jackson's job, rather than being equivalent to that of an ordinary bank teller, was (in the language of the application note) "characterized by professional or managerial discretion."

KANNE, Circuit Judge, concurring in part and concurring in the judgment.

Because the record indicates that Jackson was only a "money marketing clerk," and thus not subject to a two-level upward adjustment for abuse of a position of trust, I concur in the analysis of that issue (II(A)).

I write separately, however, to indicate disagreement with those portions of Judge Coffey's opinion concerning the notice required for upward adjustments (II(B) and part of III). I cannot agree with my colleague's view that Jackson received inadequate notice that his sentence might be adjusted upward for abuse of a position of trust.

Citing the Supreme Court in *Burns v. United States,* Judge Coffey offers the view that a defendant must be given the same type of notice for sentence adjustments to Guideline ranges as is required for sentence departures from the Guidelines. I disagree because I believe that the text of the Guidelines provides adequate notice of a district court's limited sentence adjustment options.

In *Burns,* the Supreme Court held that "before a district court can *depart upward* on a ground not identified as a ground for *upward departure* either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns,* 501 U.S. 129, 138, 111 S.Ct. 2182, 2187 (1991) (emphasis added). *Burns* is not controlling in this case, however, because the district court did not *depart* from the Guideline range, but simply *adjusted* Jackson's sentence in conformity with the applicable Guideline range identified in the presentence report.

Two circuits have reached a position contrary to that of Judge Coffey—a position which I believe correctly resolves the issue. I agree with the First and Eighth Circuits that a lesser degree of notice is required for sentence adjustments than is required for sentence departures. *See United States v. Adipietro,* 983 F.2d 1468, 1473 (8th Cir.1993) ("While *Burns* mandates that both parties be given adequate notice before a court *departs* from the applicable guideline range, *Burns* does not mandate that adequate notice must be given before a district court addresses an *adjustment* or *enhancement.*") (citations omitted); *United States v. Canada,* 960 F.2d

263, 266 (1st Cir.1992) ("We do not read Burns to require special notice where, as here, a court decides that an upward *adjustment* is warranted based on offense or offender characteristics delineated within the Sentencing Guidelines themselves, at least where the facts relevant to the adjustment are already known to the defendant.")

In *Burns,* the Supreme Court based its decision on Fed.R.Crim.P. 32(a)(1), which requires that a defendant be given "an opportunity to comment upon the probation officer's determination and on other matters relating to the appropriate sentence." According to the Court, given the virtually unlimited grounds for departure under the Guidelines,[1] failure to give precise notice of the grounds on which the district court intends to depart would render "meaningless the parties express right 'to comment upon matters relating to the appropriate sentence.'" *Burns,* 501 U.S. at 135, 111 S.Ct. at 2186 (quoting Fed.R.Crim.P. 32(a)(1)). The Court stressed that "no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." *Id.*

What Judge Coffey in the case before us does not acknowledge, however, is that sentence adjustments and sentence departures are very different creatures.[2] "Departures are sharply circumscribed under the sentencing guidelines and represent a more drastic change in a defendant's sentence than merely adjusting a sentence without going outside the presumptive sentencing range." *Adipietro,* 983 F.2d at 1473. Moreover, unlike the grounds for departure, the grounds for adjustments are limited—"specific and finite." *Canada,* 960 F.2d at 266. As such, "an adjustment does not require the parties to try 'to anticipate and negate every conceivable ground on which the district court might choose to depart on its own initiative.'" *Id.* at 266–267 (quoting *Burns,* 501 U.S. at 137,

111 S.Ct. at 2187). The Guidelines enable the parties to focus in advance on the limited list of grounds for adjustment and gives them adequate notice that those grounds may be used by the district court in imposing a sentence on the defendant.

Unlike the departure grounds, all of the adjustment grounds relate to the offense charged. Thus, in almost every case, both the defendant and the government should readily be able to ascertain and argue the relevant facts with respect to each of the recognized grounds for adjustment. Of course, abuse of a position of trust is not an unusual aspect of offenses which are banking related. The application note in the commentary to section 3B1.3 excluded "ordinary bank tellers" (and one may presume ordinary bank clerks) from an upward adjustment for abuse of a position of trust. By reading the application note concerning abuse of a position of trust, one charged with a bank related offense could reasonably anticipate that this section might come into play at sentencing. That it did so in this case was not unexpected. It is abundantly clear, in fact, that Jackson's counsel was well aware of the application note. In response to questioning by the district court during the sentencing hearing, Jackson's counsel stated "my client just indicated to me that he was a clerk in this bank. He was not a bank official of any sort." What additional relevant information could have been provided? No continuance for witness preparation was required. Counsel for the defendant succinctly provided the court with information about his client which, as is plainly evident from the application note to section 3B1.3, should have prohibited an upward adjustment for abuse of a position of trust.

Also, I cannot agree with Judge Coffey's position that "there is no evidence in this record to indicate that the defendant, Jackson, was or should have been aware of the

---

**1.** *See* U.S.S.G. Ch. 1, Pt. A ("With ... [a few] specific exceptions ... the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.")

**2.** Both "adjustments" (U.S.S.G., Chap. 3—Adjustments) and "departures" (U.S.S.G., Chap. 5, Part K—Departures) are terms of art in the sentencing guideline scheme. "Enhancement" is a term not found in the sentencing .guide lexicon and its use in judicial opinions may have led to confusion between the two distinctly different concepts of "adjustments" and "departures."

facts relevant to an adjustment for an abuse of a position of trust." *See supra* at 1107. The determining issue for a section 3B1.3 adjustment in this case was simply Jackson's employment status with the bank—and the record shows that the court had been made aware, through the presentence report and comments of defense counsel, that Jackson was not a bank official but merely a clerk earning $14,952.08.[3]

In most sentencing proceedings, as Judge Coffey recognizes, there is no necessity for calling witnesses. To grant defendants an absolute right to call witnesses at sentencing proceedings would accelerate a drift toward converting those hearings into second trials. Of course, due process does not require that a criminal defendant be afforded an opportunity to call and cross-examine witnesses at sentencing. *United States v. Giltner*, 889 F.2d 1004, 1008 (11th Cir.1989) (citing *United States v. Satterfield*, 743 F.2d 827, 840 (11th Cir.1984)). Nor, is a right to call witnesses contemplated by Rule 32(a)(1) of the Federal Rules of Criminal Procedure which governs imposition of sentence. Moreover, as Judge Coffey recognizes, the Guidelines leave the method of resolution of the disputed sentencing factors to the discretion of the district judge. U.S.S.G. § 6A1.3, comment.

With regard to sentence adjustments, the proper approach is to recognize that "the guidelines themselves provide [adequate] notice to the defendant of the issues about which he may be called upon to comment." *Id.* at 267. The Guidelines satisfy the notice requirement under the due process clause and give the defendant a meaningful "opportunity to comment on . . . matters relevant to his sentence." Jackson had adequate notice from the Guidelines of the potential sentence adjustment—and, in fact, acted on that notice by presenting facts which constituted a bar to the upward sentence adjustment.

---

**3.** The evidence in the record discloses the obvious, that Jackson was aware of his own job responsibilities. It was Jackson himself who informed the probation officer during the preparation of the presentence report that he was a "money marketing clerk." Moreover, as noted above, it was Jackson, through his attorney, who told the court at sentencing that he was only a clerk, not a bank officer.